1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7               FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9    KURT VON STADEN,                    No.    C 09-3788 MMC (PR)
10            Petitioner,                **ORDER DENYING PETITION**
                                         **FOR WRIT OF HABEAS**
11      v.                               **CORPUS; DENYING**
                                         **CERTIFICATE OF**
12   RON DAVIS, Warden,                  **APPEALABILITY**
13            Respondent.
14   _____/
15   KURT VON STADEN,                    No.    C 09-3789 MMC (PR)
16            Petitioner,                **ORDER DENYING PETITION**
                                         **FOR WRIT OF HABEAS**
17      v.                               **CORPUS; DENYING**
                                         **CERTIFICATE OF**
18   RON DAVIS, Warden,                  **APPEALABILITY**
19            Respondent.
     _____/
20
21          Before the Court are the above-titled petitions for a writ of habeas corpus, filed

22   pursuant to 28 U.S.C. § 2254 by petitioner Kurt Von Staden, challenging the validity of

23   separate judgments obtained against him in state court.[1]  For the reasons discussed below, the

24   petitions will be denied.

25

26   _____

27          [1]  Petitioner initially named Michael S. Evans, former warden of Folsom State Prison,
     as the respondent in these actions.  Pursuant to Rule 25(d) of the Federal Rules of Civil
28   Procedure, Ron Davis, the current warden of San Quentin State Prison, where petitioner is
     currently incarcerated, is hereby SUBSTITUTED as respondent in place of petitioner's prior
     custodian.

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

# I. PROCEDURAL HISTORY

In April 2004, the Marin County District Attorney filed three separate informations against petitioner (Case Nos. SC122889A, SC124442A, and SC126580A).  The cases were consolidated for trial.  In November 2004, a Marin County jury found petitioner guilty of two counts of possession of methamphetamine (Cal. Health & Safety Code § 11377(a)), and one count of possession of a concealed dirk or dagger (Cal. Penal Code § 12020(a)).  Additionally, in a separate Marin County case, also tried before a jury in 2004 (SC 136369B), petitioner was found guilty of burglary (Cal. Penal Code § 459), and grand theft (Cal. Penal Code § 487(a)).  The jury in one of the two trials and the trial court in the other each found petitioner had nine prior convictions (Cal. Penal Code § 1203), including four prior felony convictions, two of which qualified as "serious" (id. § 1170.12), and that he had committed offenses while released on bail (id. § 12022.1).

In a single sentencing proceeding, petitioner was sentenced to an aggregate term of 39 years and 8 months to life in state prison.  On February 7, 2008, the California Court of Appeal consolidated the cases and affirmed the judgment, and, on May 21, 2008, the California Supreme Court denied review.

On August 18, 2009, petitioner filed in federal court a petition for a writ of habeas corpus (C 09-3788 MMC), challenging his conviction in Case Nos. SC122889A, SC124442A, and SC126580A; that same date, petitioner filed a separate petition for a writ of habeas corpus (C 09-3789 MMC), challenging his conviction in Case No. SC 136369B.  Both actions were stayed to afford petitioner an opportunity to exhaust state court remedies.

Petitioner's state petition for a writ of habeas corpus was summarily denied by the California Supreme Court on March 21, 2012.

On April 6, 2012, the Court reopened C 09-3788 MMC, and ordered respondent to show cause why the petition should not be granted.  Respondent filed an answer.  Petitioner did not file a traverse, and the time in which to do so has passed.

On April 16, 2013, the Court reopened C 09-3789 MMC and ordered respondent to show cause why the petition should not be granted.  Respondent filed an answer, and

United States District Court
For the Northern District of California

1    petitioner filed a traverse.[2]

2    Because the petitions raised three common claims of error, the Court, on

3    November 15, 2013, consolidated the actions and notified the parties it would rule on both

4    petitions in a single order once briefing was complete.  The Court now rules herein on both

5    petitions.

6    ## II. STATEMENT OF FACTS

7    The California Court of Appeal found the facts underlying petitioner's convictions to

8    be as follows:[3]

9    ***Case Number SC122889A***

10    While Deputy Michael Brovelli of the Marin County Sheriff's Office was on
     patrol at about 12:30 a.m. on November 22, 2001, he noticed a black Corvette
     that did not have a license plate lamp.  Brovelli detained the Corvette, which
11    was driven by [petitioner]; a woman identified as Danielle Hoff occupied the
     front passenger seat.  After [petitioner] was unable to produce a driver's
12    license, registration or proof of insurance, Deputy Brovelli conducted a
     "warrant search" and discovered that his driver's license was suspended.
13    [Petitioner] was arrested, handcuffed and pat searched.  The deputy felt a "hard
     object" on [petitioner]'s waistband "which was concealed by his shirt."  After
14    lifting the shirt, Deputy Brovelli discovered that the object "was a dirk" inside
     a sheath.
15

16    During a search of the Corvette, Deputy Brovelli discovered a "counterfeit
     registration tab" affixed to the rear window of the vehicle.  A "clear plastic bag
17    with a white crystal-like substance inside of it" that was subsequently identified
     as methamphetamine was found between the driver's seat and the center
18    console.  A bag seized from the rear seat contained hypodermic needles, a
     marijuana pipe and some cotton balls.  Hoff stated that the bag belonged to her,
19    and she was subsequently arrested for possession of hypodermic syringes.

20    [Petitioner] was transported to the police station, where he agreed to talk to
     Deputy Brovelli.  When asked about the dirk, [petitioner] said that it "came
21    from Pakistan," and he carried it "for no particular reason."  He indicated that a
     friend gave him the "fake registration" about six weeks before, and he knew
22    nothing more about it.  [Petitioner] also stated that he "didn't know anything
     about any drugs" found in the plastic bag.
23

24    ***Case Number SC124442A***
     On May 14, 2002, at about 6:00 p.m., as Sergeant Jeff Edwards of the Marin

25

26    [2] Petitioner has filed a "motion to amend" his traverse, in which he asks that
     references to California Penal Code § 192 be corrected to read § 191.5.  The motion (C
     09-3789 MMC at Dkt. No. 25) is hereby GRANTED.

27

28    [3] The state court's summary is presumed correct.  See Hernandez v. Small, 282 F.3d
     1132, 1135 n.1 (9th Cir. 2002); 28 U.S.C. § 2254(e)(1).

County Sheriff's Office drove through the intersection of Park Street and San Geronimo Valley Road, he observed [petitioner] working on the engine of a red Corvette.  Although the Corvette had a "2002 tab" on the license plate, the registration had expired in 1994.  Sergeant Edwards contacted [petitioner], who stated that he "had just purchased the car a few months ago," and the "2002 tab was on the vehicle when he had purchased it."  The officer then conducted a consent search of [petitioner] and the Corvette.  Edwards observed a Marlboro cigarette box on the front passenger seat; inside it was a plastic baggie that contained a "white, powdery substance."  The officer suspected that the powder was methamphetamine or cocaine, but when asked [petitioner] said "it was battery acid."  Edwards conducted an "NIK field test" which was "presumptive positive" for methamphetamine.[4]  [Petitioner] was placed under arrest.  When asked about the methamphetamine, [petitioner] said, "What's there to talk about?"

As he arranged for the red Corvette to be towed, Sergeant Edwards discovered that the VIN on the vehicle did not match the VIN of the license plate, and the license plate "was registered to a subject out of Santa Rosa."  When asked about the discrepancy [petitioner] said that he owned "five different Chevy Corvettes, and that he had switched the [license] plates so he could drive that car around for the day."

### Case Number SC126580A

[Petitioner] was detained by two San Rafael Police Department officers on the morning of October 10, 2002, as he drove a black Corvette on A Street in San Rafael.  Officer Ray Fernandez recognized [petitioner] as the driver of the Corvette.  He also noticed that [petitioner] was wearing a long leather jacket.  [Petitioner] stepped out of the vehicle and onto the sidewalk to be pat searched as requested by Officer Fernandez.  During the pat search the officer detected two hard objects in the right pocket of the jacket: one square in shape, which turned out to be a pack of cigarettes; and the other cylindrical, which the officer recognized as a glass drug pipe.  When Officer Fernandez asked [petitioner] if "he had the drugs that went with the pipe," [petitioner] motioned to the right pocket of his jacket.  The officer extracted a "baggie of suspected narcotics" out of the jacket pocket, which testing revealed to be 2.38 grams of methamphetamine, along with a silver cigarette lighter.  Inside the Corvette the officer found a shirt, a wallet that contained $280 in cash, and a black, hand-held drug scale.  When questioned later at the police station [petitioner] admitted that the drug pipe and drugs were "for his own use."  [Petitioner] added that he "had been addicted to methamphetamine for about three years."

### Case Number SC136369B

The burglary and grand theft offenses occurred on Sunday, July 18, 2004, at a vacant residence owned by Martha Thomson at 71 Casneau Avenue in San Rafael.  Martha Thomson and her late husband Walter lived in the house for many years, but it had been empty for the past five years before the burglary.  The Thomsons' son Paul had been "keeping an eye" one the house and "cleaning up" every weekend beginning in February of 2004.  The house was filled with the Thomsons' personal belongings, some valuables, and furniture.

---

[4]   A subsequent lab test confirmed that the substance was 1.61 grams of methamphetamine.

4

On Sunday, July 11th, Paul visited the house, cleaned up, then locked the front door and secured the windows before he left.

On the afternoon of July 18, 2004, a neighbor, Jenny Gaetani, and her friend Janet Chapman, observed two women on the porch of Thomsons' residence as they climbed into the house through a window.  The women were carrying shopping bags.  After one of the women disappeared into the house, Chapman and Gaetani yelled at the other, "What do you think you're doing?"  One of the women began to leave, and said to the other, "We've got to get out of here."  Another neighbor "came running up with a telephone" when Gaetani asked for help.

As the two women were walking down the driveway Gaetani again asked, "What are you doing?"  They replied, "we're here to clean the Thomsons' house," and claimed they were "working for somebody by the name of Jeff Brown."  They continued to walk down the street, past two parked cars, a silver Corvette registered to [petitioner], and a yellow pickup truck with Oregon license plates.  The women then turned around, entered a yellow pickup truck, and began to drive away.  Gaetani "stopped them" and asked where they were going.  They said "down the hill to call this Jeff Brown," so Gaetani "let them go," although she "jotted down the license plate" of the yellow pickup truck and gave it to the police.

As Gaetani was on the phone with the police, "two men came out from the Thomsons' driveway," [petitioner] and Keith Tadder, and "started walking up the hill."  One of the men was carrying a backpack over his shoulder that "looked like it had stuff in it."  Gaetani yelled at them to "stop," but they "just kept on walking ."  In response to Gaetani's query, [petitioner] said that he was "not Jeff Brown," but rather was "Mr. Thomson's son," which Gaetani's husband knew to be untrue.

Before the two men reached the silver Corvette that had been parked next to the yellow pickup truck, police cars arrived.  Gaetani said, "Those are the men.  Go get them."  The two men were detained and pat searched by the police.  Tadder possessed a "very high tech" silver lighter and a "formal butter knife," but neither he nor [petitioner] had any weapons.  [Petitioner] was carrying two nylon bags which "appeared to be full."  He put the bags on the ground when confronted by the police.  [Petitioner] and Tadder were then handcuffed and placed in different police cars while an investigation at the scene proceeded.

The officers observed that the condition of the Thomsons' house was "very dilapidated," and a "newly installed" fence had been placed around it to "keep people from going into a dangerous area."  The decks attached to the front of the house and garage were rotted and appeared unsafe.  The front door was "slightly ajar," and two windows were open.  The inside of the residence was littered with furniture and what "looked like a lifetime of property" placed in boxes and "items out of boxes" that were "stacked throughout the house," waist high or higher.  On the ground outside one of the open windows were "[m]iscellaneous items" that "looked like they were from inside the residence."  The house smelled old and dusty.  No other suspects were seen in or around the residence.

5

The officers obtained the license number of the yellow pickup truck and a description of the two women from the witnesses. A "countywide roadblock and an APB" was issued for the two women and the pickup truck, but they were never found.

When first questioned by the police, [petitioner] said that he "was looking through an abandoned house down the road." Later, in the patrol vehicle, [petitioner] was asked if he "knew the two women" who had been seen at the residence. He replied "that he did," but did not want to disclose their names. [Petitioner] claimed that he had never been to the house before, but the two women had "been there a lot," and "[t]heir house was full of stuff."[5] When asked why he was in the house, [petitioner] stated that he was moving, "needed the money," and "went inside looking for stuff." [Petitioner] added that he "got excited when he found some coins and other good stuff" in the house. [Petitioner] did not advise the officer that he found any of these items on the driveway or sidewalk.

The two bags seen in [petitioner]'s possession at the house were "opened and inventoried" at the police station. At trial, Martha Thomson identified the contents of the bags as her personal property that she had left in the residence at 71 Casneau Avenue when she and her husband moved out a few years before. She had not given permission to anyone except her son Paul and his wife Diane to enter the residence.

[Petitioner] testified in his defense that a few days before the burglary at 71 Casneau Avenue he and his friend Keith Tadder met two women, Cathy and Kathleen in the parking lot of a Kragen Auto Parts store. The women "invited [them] up to their house to get high." [Petitioner] and Tadder accompanied the women to their residence in San Rafael, where they shared some methamphetamine and discussed some "stuff" in the garage that the women had obtained from an "abandoned house" they were cleaning in Sausalito. [Petitioner] testified "The girls said there was a lot of cool stuff down there."

The following Sunday afternoon, Tadder arrived at [petitioner]'s residence to tell him that "the two girls from the few previous days" had "invited him to go down to the house with them" to "go through [the] stuff and see if there was anything" he wanted. Tadder asked [petitioner] for a ride to the abandoned house, and he agreed. [Petitioner] testified that he thought "the two girls" had permission to be in the house.

[Petitioner] parked his silver Corvette on the street and walked with Tadder to the front door of the house, which was locked. They went to the back yard to wait for the two women. [Petitioner] noticed that there was "garbage everywhere around the place."

After waiting for about an hour, they decided to leave, and walked toward the front of the house. They noticed that the front door was now ajar. Tadder went to the door, momentarily stepped inside, and "yelled the girls' names," but [petitioner] proclaimed that he was "going." [Petitioner] testified that he never entered the house.

---

[5]    [Petitioner] testified that he was referring to the women's garage rather than their house.

United States District Court
For the Northern District of California

As they proceeded down a stairway toward the street, [petitioner] noticed "two bags" on the right side of the driveway.  He looked inside the bags, and saw "a bunch of coins and stuff on top."  He was "broke," so he was "ecstatic" to find the coins.  [Petitioner] testified that he knew the "stuff" in the bags belonged to someone, but he was not aware that the two women "did not have permission to have that stuff."

As [petitioner] was walking down the street away from the house looking into the bags which he had thrown over his shoulder, Tadder said, "The cops are coming down the hill."  [Petitioner] looked up to see police cars as Tadder yelled, "Go, go, go, keep walking.  Just walk."  As [petitioner] continued to walk down the street an officer shouted at him, "Hold it right there for a minute."  When the officer asked what he was "doing in that area," [petitioner] said that he was "checking out the abandoned building down the street."  He declined to identify the "two women" that were seen in the house because he was arrested and did not "want to help the police."

People v. Von Staden, No. A111629, 2008 WL 332381, at *1-5 (Cal. Ct. App. Feb. 7, 2008).

## III. DISCUSSION

A.    Standard of Review

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Rose v. Hodges, 423 U.S. 19, 21 (1975).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  Additionally, habeas relief is warranted only if the constitutional error at issue "'had substantial and injurious effect or influence in determining the jury's verdict.'"  Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases,"

United States District Court

For the Northern District of California

or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 405-06. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence. "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412 (internal quotation marks omitted). "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003).

Here, as noted, the California Supreme Court denied petitioner's petition for review. The Court of Appeal, in its opinion on direct review, addressed seven of the claims petitioner raises in the instant petitions. The Court of Appeal thus was the highest court to have reviewed the claims in a reasoned decision, and, as to those claims, it is the Court of Appeal's decision that this Court reviews herein. See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005). One claim was presented only to the California Supreme Court in petitioner's state petition for a writ of habeas corpus, which petition was summarily denied, and, as discussed below, is procedurally defaulted. The remaining claims appear not to have been raised in the state court in any manner, but as discussed below, will be denied on the merits.

**United States District Court**
For the Northern District of California

B.      Petitioner's Claims in C 09-3788 MMC

In 09-3788 MMC, petitioner raises the following claims for relief: (1) the trial court failed to instruct the jury that intent to conceal is a necessary element of a violation of section 12020(a) of the  California Penal Code; (2) the trial court erroneously allowed evidence that petitioner committed crimes other than those charged; (3) there was insufficient evidence to support a finding that petitioner's 1986 conviction for gross vehicular manslaughter was a serious felony conviction for purposes of California's Three Strikes Law; (4) petitioner was denied a meaningful opportunity to contest factual issues relating to said prior conviction; (5) the prosecution failed to present appropriate documentary evidence to establish said prior conviction; and (6) trial counsel rendered ineffective assistance by failing to present evidence as to said prior conviction, which evidence would have shown the conviction was not a serious felony for purposes of California's Three Strikes Law.

1.      Instructional Error – Intent to Conceal

Petitioner claims the trial court erred by failing to instruct the jury on intent to conceal as an element of the charge of carrying a concealed dirk or dagger in violation of section 12020(a)(4) of the California Penal Code.[6]

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  Id. at 72 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  Id.  A petitioner also must show actual prejudice from the error, i.e., that the error had a substantial and injurious effect

_____

[6]  At the time of petitioner's trial, section 12020 declared it a crime, as either a felony or a misdemeanor, for "[a]ny person" to "[c]arr[y] concealed upon his or her person any dirk or dagger."  Cal Penal Code § 12020(a)(4) (2004).  The statute defined a "dirk" or "dagger" as any "instrument," including a "knife," that is "capable of ready use as a stabbing weapon that may inflict great bodily injury or death."  Id., subd. (c)(24).

9

United States District Court

For the Northern District of California

1   or influence in determining the jury's verdict, before the court may grant federal habeas

2   relief.  Calderon v. Coleman, 525 U.S. 141, 146 (1998) (citing Brecht v. Abrahamson, 507

3   U.S. 619, 637 (1993)).

4        A defendant is entitled to an instruction on a theory of defense only "if the theory is

5   legally cognizable and there is evidence upon which the jury could rationally find for the

6   defendant."  United States v. Boulware, 558 F.3d 971, 974 (9th Cir. 2009) (internal quotation

7   marks omitted).  Due process does not require an instruction be given unless the evidence

8   supports it.  See Hopper v. Evans, 456 U.S. 605, 611 (1982) (holding court need instruct on

9   lesser-included offense only "when the evidence warrants such an instruction").  Moreover,

10  "[a] state trial court's refusal to give [a requested] instruction does not alone raise a ground

11  cognizable in a federal habeas corpus proceeding."  Dunckhurst v. Deeds, 859 F.2d 110, 114

12  (9th Cir. 1988) (internal quotation marks omitted).  "The error must so infect the entire trial"

13  that the petitioner was deprived of the fair trial guaranteed by the Fourteenth Amendment.

14  Id.  "Whether a constitutional violation has occurred will depend upon the evidence in the

15  case and the overall instructions given to the jury."  Duckett v. Godinez, 67 F.3d 734, 745

16  (9th Cir. 1995).  The omission of an instruction is less likely to be prejudicial than a

17  misstatement of the law.  Walker v. Endell, 850 F.2d 470, 475-76 (9th Cir. 1987).  A habeas

18  petitioner whose claim involves a failure to give a particular instruction, as opposed to a

19  claim that involves a misstatement of the law in an instruction, bears an "'especially heavy

20  burden.'"  Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (quoting Henderson v.

21  Kibbe, 431 U.S. 145, 155 (1977)).

22        Here, the Court of Appeal summarized and rejected petitioner's claim as follows:

23        The court gave to the jury the standard CALJIC No. 12.41 instruction
    which sets forth the elements of the offense of carrying a concealed dirk or
24  dagger and provides the statutory definition of the terms.  (See People v.
    Aubrey (1999) 70 Cal.App.4th 1088, 1094.)  [Petitioner]'s complaint is with
25  the court's failure to additionally admonish the jury of "an intent to conceal
    element." [Petitioner] maintains that "[s]ection 12020, subdivision (a)(4) must
26  be interpreted to include an element of intent to conceal," and without an
    instruction to that effect the jury may have convicted him "even if it was
27  convinced that [he] never intended to conceal the knife, or that he was not even
    aware it was concealed."  He claims that the trial court's deficient instruction
28  therefore deprived him of the due process "right to have the jury find beyond a
    reasonable doubt every element of the crime."

10

The position espoused by [petitioner] is not supported by existing authority.  In *People v. Rubalcava* (2000) 23 Cal.4th 322 (*Rubalcava*), "our Supreme Court considered the intent required to violate section 12020, subdivision (a)(1) by possessing a concealed dirk or dagger.  It held that the statute defined a general intent crime because it 'describes a single criminal act–carrying a concealed dirk or dagger on the person–and makes no reference to any other act or consequence.' [Citation.]"  (*In re Martin Alonzo L.* (2006) 142 Cal.App.4th 93, 96.)  The court in *Rubalcava* clarified that "[t]he prosecution need not show the intent of the possessor to use an instrument in a violent manner."  (*Rubalcava*, *supra*, 23 Cal.4th at p. 329, quoting *People v. Grubb* [1965] 63 Cal.2d 614, 621, fn. 9....)  In fact, 'no court [has] construed section 12020 as a specific intent crime.'  (*Rubalcava*, *supra*, at p. 329.)"  (*People v. Gaitan* (2001) 92 Cal.App.4th 540, 545.)  "In so holding, the court concluded 'the relevant language of section 12020 is unambiguous and establishes that carrying a concealed dirk or dagger does not require an intent to use the concealed instrument as a stabbing weapon.' [Citation.]"  (*People v. Blick* (2007) 153 Cal.App.4th 759, 770, italics omitted.)  "Accordingly, [petitioner]'s intended use is not an element of the crime, and 'no further mental state beyond willing commission of the act proscribed by law' is necessary. [Citation.]"  (*Rubalcava*, *supra*, at p. 328.)

"The statute does, however, contain a knowledge requirement."  (*In re Martin Alonzo L.*, *supra*, 142 Cal.App.4th 93, 96.)  *Rubalcava* "said that because the crime of carrying a concealed dirk or dagger (Pen.Code, § 12020, subd. (a)) criminalizes " 'traditionally lawful conduct,'" we construe the statute to contain a "knowledge" element. [Citation.] Thus, to commit the offense, a defendant must still have the requisite guilty mind: that is, the defendant must knowingly and intentionally carry concealed upon his or her person an instrument "that is capable of ready use as a stabbing weapon." [Citation.]  A defendant who does not know that he is carrying the weapon or that the concealed instrument may be used as a stabbing weapon is therefore not guilty of violating section 12020.' [Citation.]"  (*People v. Salas* (2006) 37 Cal.4th 967, 980, first italics omitted; italics added; see also *People v. King* (2006) 38 Cal.4th 617, 627.)

. . .

The trial court advised the jury in compliance with the directive of the court in *Rubalcava* that the intended use of the dirk or dagger is not an element of the crime, but the prosecution must prove that the knife was "knowingly and intentionally carried" by the person, "substantially concealed upon his person," and was ready for use as a stabbing weapon. (See *People v. Prieto* (2003) 30 Cal.4th 226, 269; *People v. Blick*, *supra*, 153 Cal.App.4th 759, 770.)  Nothing in *Rubalcava* or any other authority required the court to also instruct that the offense required additional proof of an intent to conceal the dirk or dagger. The trial court's instruction was not an incorrect statement of law.

People v. Von Staden, 2008 WL 332381, at *9-10.

In sum, the California Supreme Court has conclusively resolved the issue against petitioner.  People v. Rubalcava, 23 Cal. 4th 322 (2000) held that section 12020, subdivision (a), stated a general intent crime with no element requiring specific intent to conceal.  This Court must defer to the California courts' interpretation of its own laws.  See Estelle, 502

1   U.S. at 67-68 (holding federal writ not available for alleged error in interpretation or

2   application of state law); Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993) (holding

3   federal courts are "bound by a state court's construction of its own penal statutes").

4          Further, the Court of Appeal found that, even if there were error in the instruction,

5   such error would be harmless given that it could be reasonably inferred from the evidence

6   that petitioner intended to conceal the dirk, which was kept in a sheath in his waistband,

7   covered by his shirt.  See People v. Von Staden, 2008 WL 332381, at *10 n.9.  This Court

8   agrees that even assuming instructional error, any such error was harmless.  Specifically,

9   given the evidence before the jury as to how petitioner was carrying the dirk, it cannot be

10  said that any error from the omission of the requested instructions resulted in "substantial and

11  injurious effect or influence in determining the jury's verdict."  Calderon v. Coleman, 525

12  U.S. at 146.

13         Accordingly, petitioner is not entitled to habeas relief on this claim.

14         2.      Evidence of Other Acts

15         Petitioner claims the trial court's admission of his prior crimes violated his right to

16  due process.  The Court of Appeal summarized and rejected this claim as follows:

17         [Petitioner] also argues that the trial court erred in the methamphetamine
           possession trial by admitting evidence of his 1993 convictions for possession
18         for sale of methamphetamine (Health & Saf.Code, § 11378), and possession of
           methamphetamine while armed with a firearm (Health & Saf.Code, § 11370.1).
19         He claims that "[t]he prior crimes evidence ... was not admissible to show
           intent or knowledge" due to the lack of similarity to the "charged offenses,"
20         and "was also inadmissible under Evidence Code section 352."

21         "The rules governing the admissibility of evidence of other crimes are familiar
           and well settled.  Evidence Code section 1101, subdivision (b) provides in
22         pertinent part that evidence of other crimes is admissible 'when relevant to
           prove some fact (such as motive, opportunity, intent, preparation, plan,
23         knowledge, identity, absence of mistake or accident ... ) other than his or her
           disposition to commit such an act.'"  (People v. Gray (2005) 37 Cal.4th 168,
24         202; see also People v. Jablonski (2006) 37 Cal.4th 774, 822-823; People v.
           Catlin (2001) 26 Cal.4th 81, 111; People v. Diaz (1992) 3 Cal.4th 495, 561;
25         People v. Branch (2001) 91 Cal.App.4th 274, 280; People v. Van Winkle
           (1999) 75 Cal.App.4th 133, 140.)  "'The admissibility of other-crimes evidence
26         depends on three principal factors: (1) the materiality of the fact sought to be
           proved or disproved; (2) the tendency of the uncharged crime to prove or
27         disprove the material fact; and (3) the existence of any rule or policy requiring
           the exclusion of relevant evidence, e.g., Evidence Code section 352.
28         [Citations.]' [Citations .]"  (People v. Brown (1993) 17 Cal.App.4th 1389,

1395; see also *People v. Carpenter* (1997) 15 Cal.4th 312, 378-379.) "Because this type of evidence can be so damaging, '[i]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded.' [Citation.]" (*People v. Daniels* (1991) 52 Cal.3d 815, 856; see also *People v. Gray*, *supra*, at p. 202; *People v. Hawkins* (1995) 10 Cal.4th 920, 951; *People v. Johnson* (1991) 233 Cal.App.3d 425, 443-444.)

### A. The Materiality of the Evidence.

We first look at the probative value of the evidence that [petitioner] was previously convicted of crimes that, like the current charged offenses, required proof of his knowledge of the presence and narcotic nature of the controlled substance. (*People v. Palaschak* (1995) 9 Cal.4th 1236, 1242.) . . . Evidence of [petitioner]'s prior convictions was admitted for the proper and limited purpose of proving that he acted with the requisite knowledge of the narcotic nature of the methamphetamine in his possession. (*People v. Tripp* (2007) 151 Cal.App.4th 951, 956; *People v. Thornton* (2000) 85 Cal.App.4th 44, 49-50; *People v. Ellers* (1980) 108 Cal.App.3d 943, 953.) . . . .

### B. The Similarity of the Prior Convictions.

We further conclude that the prior convictions were sufficiently similar to the charged offenses to justify their admission. . . .   The least degree of similarity is required to establish relevance on the issues of intent or knowledge. (See *People v. Ewoldt*, *supra*, 7 Cal.4th 380, 402; *People v. Tapia* (1994) 25 Cal.App.4th 984, 1021.) " 'For this purpose, the uncharged crimes need only be "sufficiently similar [to the charged offenses] to support the inference that the defendant ' "probably harbored the same [knowledge] in each instance." [Citations.]' " ' [Citations.]" (*People v. Lewis* (2001) 25 Cal.4th 610, 637; see also *People v. Carpenter*, *supra*, 15 Cal.4th 312, 379; *People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1445; *People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1210.) . . .

Prior convictions that required proof of the same element of knowledge had enough similarity to justify admission of the uncharged misconduct evidence. (See *People v. Tapia*, *supra*, 25 Cal.App.4th 984, 1022.)  The mere fact of [petitioner]'s prior convictions for possession of methamphetamine indicated that his current possession of the same controlled substance was accompanied by the same knowledge. (See *People v. Demetrulias* (2006) 39 Cal .4th 1, 16-17.)

### C. The Admissibility of the Evidence Under Evidence Code Section 352.

The final inquiry is directed at [petitioner]'s claim that evidence of the prior convictions, even if material and sufficiently similar enough to the charged offense, was nevertheless subject to exclusion under Evidence Code section 352.  "In addition to its relevance to an issue other than predisposition or propensity, to be admissible under [Evidence Code] section 1101, subdivision (b), the probative value of the evidence of uncharged crimes 'must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury.' [Citations.]" (*People v. Walker* (2006) 139 Cal.App.4th 782, 796.)  "A court must therefore also examine whether the probative value of prior bad act evidence is substantially outweighed by the

probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (*People v. Zepeda*, *supra*, 87 Cal.App.4th 1183, 1211.) " ' "Since 'substantial prejudicial effect [is] inherent in [such] evidence,' uncharged offenses are admissible only if they have substantial probative value." [Citation.]' [Citation.]" (*People v. Hawkins*, *supra*, 98 Cal.App.4th 1428, 1445, quoting *People v. Ewoldt*, *supra*, 7 Cal.4th 380, 404, italics omitted.)

. . .

The markedly similar uncharged misconduct evidence, as we have observed, had appreciable relevance on the issue of knowledge. [Petitioner]'s repetition of the act of possession of methamphetamine demonstrated persuasively that the charged possession was not uninformed, inadvertent, mistaken or innocent. . . .

We look finally at the prejudice associated with the evidence. The evidence was damaging to the defense, but not prejudicial in the sense contemplated by Evidence Code section 352. " ' " "The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against ... [one party] as an individual and which has very little effect on the issues.' " [Citations.]" (*People v. Garceau* (1993) 6 Cal.4th 140, 178; see also *People v. Killebrew* (2002) 103 Cal.App.4th 644, 650.) " 'In applying section 352, "prejudicial" is not synonymous with "damaging." ' [Citations.]" (*People v. Callahan* (1999) 74 Cal.App.4th 356, 371.) [Petitioner]'s claim that the evidence was subject to improper consideration to prove disposition is rebutted by the effective limiting instruction given by the trial court and the admonition repeated by defense counsel for the jury not to "use it to show guilt in this case" or as "character evidence," or to "show he's a scofflaw." The jury is presumed to have adhered to the admonitions. (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1023.) The source of the evidence was unrelated to the charged offense, the prior convictions were not more inflammatory than the charged offenses, and the jury was not under the impression that [petitioner] had gone unpunished for the prior convictions. Upon consideration of both the probative value of the evidence and its prejudicial effect we find that the trial court did not abuse its discretion by admitting the uncharged acts evidence.

People v. Von Staden, 2008 WL 332381, at *11-14.

Petitioner first argues that the other crimes evidence was not admissible under section 1101(b) of the California Evidence Code. This claim alleges error under state law only. "[It] is not the province of a federal habeas court to reexamine state-court determinations on state-law questions[;] [i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 67-68; see also Aponte v. Gomez, 993 F.2d at 707 (holding federal courts are "bound by a state court's construction of its own penal statutes"). To the extent petitioner is claiming the evidence was impermissible character or propensity evidence, the claim fails

United States District Court

For the Northern District of California

1   because no remediable constitutional violation occurred.  A federal habeas petitioner's due

2   process right concerning the admission of propensity evidence is not clearly established for

3   purposes of review under AEDPA, the Supreme Court having reserved the issue as an open

4   question.  Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006).

5          Petitioner's related contention that the prejudicial effect of the conviction evidence

6   outweighed its probative value also fails.  First, the Supreme Court "has not yet made a clear

7   ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process

8   violation sufficient to warrant issuance of the writ."  Holley v. Yarborough, 568 F.3d 1091,

9   1101 (9th Cir. 2009).  Second, the admission of evidence is not subject to federal habeas

10  review unless a specific constitutional guarantee is violated or the error is of such magnitude

11  that the result is a denial of the fundamentally fair trial guaranteed by due process.  Henry v.

12  Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir.

13  1986).  Due process is violated only if there are "no permissible inferences the jury may draw

14  from the evidence."  Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991).

15         Here, petitioner has not shown that a specific constitutional guarantee was violated or

16  that he was denied a fair trial.  Under section 1101 of the California Evidence Code

17  petitioner's prior convictions fell within the scope of proper evidence.  Section 1101(a)

18  prohibits the admission of "evidence of a person's character or a trait of his or her character .

19  . . when offered to prove his or her conduct on a specified occasion."  Subsection (b)

20  provides, however, "[n]othing in this section prohibits the admission of evidence that a

21  person committed a crime, civil wrong, or other act when relevant to prove some fact (such

22  as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or

23  accident . . .) other than his or her disposition to commit such an act."  Because the jury could

24  have drawn the "permissible inference" that petitioner's previous possession of

25  methamphetamine in 1993 showed the nature of the same controlled substance found in his

26  coat pocket and car in 2002 was known to him, his constitutional rights were not violated.

27  See Jammal, 926 F.2d at 920.

28         Finally, any prejudicial effect was ameliorated by the trial court's instruction to the

1     jury to regard such evidence for the limited purpose of showing intent or knowledge.  7RT

2     477-78.  Specifically, the trial court instructed the jury in pertinent part as follows:

3         Certain evidence was admitted for a limited purpose.  At the time this evidence
          was admitted, you were instructed that it could not be considered by you for
4         any purpose other than the limited purpose for which it was admitted.

5         Do not consider this evidence for any purpose except the limited purpose for
          which this was admitted.
6
7         Evidence has been introduced for the purpose of showing that the defendant
          committed crimes other than that for which he's on trial, except as you will
          otherwise be instructed.
8
9         This evidence, if believed, may not be considered by you to prove that the
          defendant is a person of bad character or that he has a disposition to commit
10        crimes.  It may be considered by you only for the limited purpose of
          determining if it tends to show the existence of intent which is a necessary
11        element of the crime charged; the defendant had knowledge of the nature of
          things found in his possession.

12        For the limited purpose for which you may consider such evidence, you must
          weigh it in the same manner as you weigh all other evidence in the case.  You
13        are not permitted to consider such evidence for any other purpose.

14    Id.  This Court assumes the jury followed the trial court's instructions and used the evidence

15    appropriately.  See Richardson v. Marsh, 481 U.S. 200, 206 (1987).

16        Accordingly, petitioner is not entitled to habeas relief on this claim.

17        3.    Insufficient Evidence

18        Petitioner claims his 1986 conviction for vehicular manslaughter did not qualify as a

19    strike for purposes of California's Three Strikes Law because there was insufficient evidence

20    upon which a rational trier of fact could find the passenger who was killed was not himself

21    an accomplice in petitioner's act of gross reckless driving.  The Court of Appeal summarized

22    and rejected this claim as follows:

23        We proceed to the claims of error that are common to both trials or relate to the
          consolidated sentencing proceeding, the first of which is that the two findings
24        of a prior strike conviction are not supported by the evidence.[7]  The jury in the

25

26        [7]    Two separate findings that [petitioner] committed a qualifying
                 prior strike conviction were made in the two trials–one by a jury
27               and one by the trial court–in which essentially the same evidence
                 was presented.  While [petitioner] challenges both findings, he
28               does so based upon evidence and grounds that are common to
                 both trials below.  We will therefore consider this as a single

drug trial and the court in the burglary trial found that [petitioner]'s 1986 conviction for gross vehicular manslaughter (former § 192, subd. (c)(3)) was a qualifying prior strike conviction under section 1192.7, subdivision (c).[8] [Petitioner] claims the evidence "failed to prove that the victim was not an accomplice," as required by section 1192.7, subdivision (c), to establish that the gross vehicular manslaughter conviction "was a serious felony." He maintains that according to the record of the conviction, Tracy White, was intoxicated and may have "encouraged or facilitated" [petitioner] to "drive drunk," thereby making him an accomplice to the crime. He submits that without supporting evidence the prior gross vehicular manslaughter conviction cannot be used as [a] "serious felony" to increase the sentence for the current burglary conviction to a "life term," and he must be resentenced with a single "strike prior, [his] 1983 attempted robbery conviction."

"Under the three strikes law, a prior conviction is a 'serious felony' that counts as a strike for sentence enhancement purposes if it is a crime listed in section 1192.7, subdivision (c). (§ 667, subd. (d)(1).)" (*People v. Bueno* (2006) 143 Cal.App.4th 1503, 1507.) "The list of serious felonies under section 1192.7, subdivision (c) includes both specific, enumerated crimes and more generic descriptions of criminal conduct." (*People v. Banuelos* (2005) 130 Cal.App.4th 601, 604.) "Section 1192.7, subdivision (c)(8) provides that, besides any of a number of specific listed offenses [which do not include gross vehicular manslaughter], a 'serious felony' is 'any other felony in which the defendant personally inflicts great bodily injury on any person, other than an accomplice, ...'" (*People v. Bow* (1993) 13 Cal.App.4th 1551, 1556; see also *People v. Sargent* (1999) 19 Cal.4th 1206, 1222.) "[B]y virtue of subdivision (c)(8) of Penal Code section 1192.7, either gross vehicular manslaughter while intoxicated (Pen.Code, § 191.5) or gross vehicular manslaughter other than while intoxicated (Pen.Code, § 192, subd. (c)(1)) will be a serious felony if in

issue before us, as the parties have done.

---

[8] " 'Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence.' (Pen.Code, § 191.5, subd. (a).) The elements of Penal Code section 191.5 are: (1) driving a vehicle while intoxicated; (2) when so driving, committing some unlawful act, such as a Vehicle Code offense with gross negligence, or committing with gross negligence an ordinarily lawful act which might produce death; and (3) as a proximate result of the unlawful act or the negligent act, another person was killed." (*People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1159, fn. omitted.)

United States District Court
For the Northern District of California

the commission of the crime the defendant personally inflicts great bodily injury on any person other than an accomplice...."  (*People v. Gonzales* (1994) 29 Cal.App.4th 1684, 1688.)  Thus, respondent was required to show that [petitioner] had inflicted great bodily injury on a person who was not an accomplice to the crime.  (*People v. Thoma* (2007) 150 Cal.App.4th 1096, 1100; *People v. Leng* (1999) 71 Cal.App.4th 1, 9.)

The evidence presented below consisted of a packet of documents that proved [petitioner] suffered convictions for vehicular manslaughter with gross negligence (former Pen.Code, § 192, subd. (c)(3), now § 191.5), driving under the influence with injury (Veh.Code, § 23153, subd. (a)), driving at 0.10 percent blood-alcohol content or above with injury (Veh.Code, § 23153, subd. (b)), and driving with a revoked or suspended license (Veh.Code, § 14601.2).  The prosecution also offered the opinion of this court on appeal which affirmed the convictions and articulated the supporting evidence: that [petitioner] and the victim left a party in [petitioner]'s vehicle at around 2:00 a.m.; both had been drinking, and the victim had consumed cocaine; [petitioner] was the driver despite the host's supplication that he not drive; [petitioner] lost control of his vehicle on a curve while driving at a very excessive speed; the vehicle struck a telephone pole, killing the victim at the scene and seriously injuring [petitioner]; [petitioner]'s blood alcohol when measured later at the hospital was 0.16 percent, which according to an expert extrapolated to 0.22 percent when the accident occurred.  (See *People v. Von Staden* (1987) 195 Cal.App.3d 1423, 1425-1426 (*Von Staden*.)

[Petitioner] argues that the evidence "does not constitute proof beyond a reasonable doubt that White was not an accomplice" to the vehicular manslaughter with gross negligence offense.  He maintains that according to the evidence summarized in the *Von Staden* opinion, White may have "facilitated or encouraged" [petitioner] "to drive under the influence that night, and that therefore, under the natural and probable consequences doctrine, he could be considered an accomplice to the vehicular manslaughter."

Respondent had the burden to prove beyond a reasonable doubt the alleged prior convictions.  (*People v. Bueno*, *supra*, 143 Cal.App .4th 1503, 1507.)  "In determining the truth of a prior conviction allegation, the trier of fact may look to the entire record of the conviction, but no further.  [Citation.]  The prosecution is 'precluded from presenting any evidence outside the record of conviction to prove the circumstances of the prior crime.'  [Citation.]  The record of the prior conviction includes transcripts of the preliminary hearing, the defendant's guilty plea, and the sentencing hearing."  (*People v. Thoma*, *supra*, 150 Cal.App.4th 1096, 1101, italics omitted.)  The California Supreme Court has held that "appellate opinions, in general, are part of the record of conviction that the trier of fact may consider in determining whether a conviction qualifies under the sentencing scheme at issue," although the court warned that "[w]hether and to what extent an opinion is probative in a specific case must be decided on the facts of that case."  (*People v. Woodell* (1998) 17 Cal.4th 448, 457; see also *People v. Trujillo* (2006) 40 Cal.4th 165, 180-181.)

" 'In reviewing the sufficiency of the evidence of the prior convictions, we determine " '... whether a reasonable trier of fact could have found that the prosecution sustained its burden of proof beyond a reasonable doubt.' " ' [Citations.]"  (*People v. Bueno*, *supra*, 143 Cal.App.4th 1503, 1507.)  As with any review, we examine " ' " 'the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence–that

United States District Court

For the Northern District of California

18

United States District Court
For the Northern District of California

is, evidence which is reasonable, credible, and of solid value–such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.]" [Citation .] ...' [Citation.]" (*People v. Carter* (2005) 36 Cal.4th 1215, 1257-1258.)

. . .

In contrast to the cases relied upon by [petitioner], specific evidence in support of the gross vehicular manslaughter conviction is part of the record before us. (Cf., *People v. Cortez* (1999) 73 Cal.App.4th 276, 283; *People v. Henley* (1999) 72 Cal.App.4th 555, 558.)  The evidence recited in the prior appellate opinion in *Von Staden* demonstrates that the victim was a passenger in the vehicle driven by [petitioner], nothing more–an intoxicated passenger, as [petitioner] points out, but still just a passenger.  A legitimate inference to be drawn from the evidence, considered as it must be in the light most favorable to the judgment, is that the victim had no role whatsoever in the offense. [Footnote.]  At trial, the defense offered no conflicting evidence that White in any way acted with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.  Mere presence at the scene of the offense or giving assistance without sharing the perpetrator's purpose and intent does not establish that a person is an accomplice.  (*People v. Sully*, *supra*, 53 Cal.3d 1195, 1227; *People v. Stankewitz* (1990) 51 Cal.3d 72, 90; *People v. Snyder* (2003) 112 Cal.App.4th 1200, 1220.)  Nothing in the record indicates that the victim was also driving the vehicle, as in *People v. Verlinde*, *supra*, 100 Cal.App.4th 1146, 1160, in which the court found that accomplice liability for the crimes of gross vehicular manslaughter and felony drunk driving was "possible" under the "unusual factual situation" where the defendant and another intoxicated passenger, Vessels, "shared driving." [Footnote.]  The findings that [petitioner] sustained a prior strike conviction are supported by substantial evidence.

People v. Von Staden, 2008 WL 332381, at *16-18.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).  Consequently, where a state prisoner alleges the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt, such petitioner states a constitutional claim, Jackson v. Virginia, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, id. at 324.  For purposes of determining such claim, the relevant inquiry is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.  Where the record supports conflicting inferences, a federal habeas court must presume the trier of fact resolved any such conflicts

in favor of the prosecution, and must defer to that resolution. Id. at 326. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. Id. at 324.

The relevant inquiry is not whether the evidence excludes every hypothesis except guilt. Jackson at 326. "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." United States v. Jackson, 72 F.3d 1370, 1381 (9th Cir. 1995). The Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson v. Virginia, at 324 n.16. Further, under AEDPA, the question is whether the state court's application of the Jackson standard was objectively unreasonable. Juan H. v. Allen, 408 F.3d 1262, 1274-75 (9th Cir. 2005) ("After AEDPA, we apply the standards of Jackson with an additional layer of deference.")

Here, the state court's decision constituted a reasonable application of the Jackson standard. As the Court of Appeal described, the finding that the victim was not an accomplice in petitioner's 1986 conviction for gross vehicular manslaughter was amply supported by evidence introduced by the prosecution, including: (1) the packet of documents showing, among other things, that petitioner had been driving under the influence and with gross negligence, resulting in the death of a passenger (4CT 908-914); and (2) the appellate court's opinion in People v. Von Staden, 195 Cal. App. 3d 1423 (1987) affirming the judgment of conviction and summarizing the evidence showing the decedent was nothing more than a passenger–albeit an intoxicated one (4CT 934-935). After a review of the record, this Court finds the Court of Appeal's rejection of the underlying claim was not an "unreasonable application of Jackson and Winship." See Juan H., 408 F.3d at 1275. Specifically, a legitimate inference could be drawn from the evidence that the victim had no role in the offense, such that, under California law, he was not an accomplice.

Accordingly, petitioner is not entitled to habeas relief on this claim.

4.     Opportunity to Defend Against Prior Conviction

Petitioner claims he was denied a meaningful opportunity to defend against the

allegations that his prior vehicular manslaughter conviction involved great bodily injury on a person other than an accomplice, because the accomplice issue was not a justiciable issue in the 1986 proceeding.  The Court of Appeal summarized and rejected this claim as follows:

> [Petitioner] next argues that "[b]esides violating *Apprendi*," the findings that he "personally inflicted great bodily injury on a nonaccomplice during the commission of the prior vehicular manslaughter also violated due process." [Petitioner] complains that in both trials on the prior strike allegations he "never had any meaningful opportunity to submit proof as to whether he personally inflicted great bodily injury and whether White was an accomplice, because these were not justiciable issues" in the "1986 case."
>
> We admit to being somewhat puzzled by this argument.  While we agree that [petitioner] had no reason in the 1986 proceeding to contest the status of the victim as an accomplice or to show that he did not personally inflict great bodily injury upon the victim, he had every motivation and opportunity to dispute those issues in the two trials below that are under review in this appeal.  He was charged in both proceedings with commission of a 1986 serious felony under the three strikes law based on a violation of section 192, subdivision (c)(3).  He thus had explicit notice that the prosecution was required to prove the essential elements of the prior serious felony conviction for gross vehicular manslaughter pursuant to section 1192.7, subdivision (c)(8): that he personally inflicted great bodily injury on a person, other than an accomplice.  (See *People v. Arnett* (2006) 139 Cal.App.4th 1609, 1613.)  He was entitled to contest the evidence offered by the prosecution and present any evidence in his defense to establish that the victim was an accomplice to the 1986 gross vehicular manslaughter offense.  That he failed to do so does not constitute a violation of his due process rights.

People v. Von Staden, 2008 WL 332381 at *19.

Having reviewed the record, this Court finds the Court of Appeal's conclusion rejecting this claim was not objectively unreasonable.  There is nothing in the record showing petitioner was prevented, in the underlying proceedings, from presenting evidence in his own defense as to the prior conviction.  See 8RT 602-665; 9RT 666-682; 12RT 1390-1442.  Indeed, petitioner, in his ineffective assistance of counsel claim, acknowledges that trial counsel was entitled to put forth evidence to rebut the prosecution's case and in petitioner's defense.

Accordingly, petitioner is not entitled to habeas relief on this claim.

     5.     Prosecution's Failure to Present Appropriate Documentary Evidence

Petitioner claims the prosecution failed to present appropriate documentary evidence, relating to his 1986 gross vehicular manslaughter conviction, to prove the conviction

constituted a prior strike.  Specifically, petitioner contends the prosecution should have introduced the transcript of the 1986 vehicular manslaughter trial, which according to petitioner, revealed that the prosecution could not have established beyond a reasonable doubt that the victim was not an accomplice.  According to petitioner, the omitted transcript includes evidence showing Tracy White, the decedent, aided and abetted the vehicular manslaughter by encouraging petitioner to drive under the influence.

To the extent petitioner is repeating his claim that there was insufficient evidence to support the finding that his 1986 conviction constituted a prior strike, the claim has been addressed above.  To the extent petitioner is making a claim that his due process rights were violated by the prosecution's failure to introduce additional evidence, specifically, the transcript of his 1986 trial, the claim also fails.

At the outset, the Court finds this claim is not exhausted.  A prisoner in state custody who wishes to challenge in federal habeas proceedings either the fact or length of his confinement is first required to exhaust available state court remedies.  See 28 U.S.C. § 2254(b); Rose v. Lundy, 455 U.S. 509, 515-16 (1982).  A prisoner satisfies the exhaustion requirement if  "(1) he has 'fairly presented' his federal claim to the highest state court with jurisdiction to consider it," or "(2) he demonstrates that no state remedy remains available." Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996).  The state's highest court must be given an opportunity to rule on the claim even if review is discretionary.  See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (holding petitioner must invoke "one complete round of the State's established appellate review process").

In California, a prisoner exhausts his federal claim by fairly presenting it to the Supreme Court of California.  See Larche v. Simons, 53 F.3d 1068, 1071-72 (9th Cir. 1995); Kim v. Villalobos, 799 F.2d 1317, 1318 (9th Cir. 1986).  Even where a claim is unexhausted, however, the Ninth Circuit has held that "a federal court may deny an unexhausted claim on the merits where it is perfectly clear that the applicant does not raise even a colorable federal claim." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).

Here, a review of the record before the Court shows petitioner failed to include the

United States District Court

For the Northern District of California

instant claim in either his petition for review to the California Supreme Court or in his habeas petition in the California Supreme Court; consequently this claim is unexhausted.  Moreover, as noted, even in the absence of exhaustion, a claim may be denied on the merits where it "does not raise even a colorable federal claim."  Cassett, 406 F.3d at 624.

Petitioner offers no legal authority, nor is the Court aware of any, that required the prosecutor to acquire, read, consider, and introduce the trial transcript of the prior conviction, which petitioner claims would have disproved the prosecutor's case, i.e., that the victim was not an accomplice.  To the extent he is raising a claim for suppression of evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963), petitioner fails to show the trial transcript was exculpatory or that the prosecutor suppressed the evidence and prejudice resulted–all of which are required to establish a Brady claim.  See Banks v. Dretke, 540 U.S. 668, 691 (2004).  Further, petitioner, in his claim alleging ineffective assistance of counsel, acknowledges his trial counsel was entitled to put forth evidence to rebut the prosecution's case and in petitioner's defense.  The trial transcripts presumably are a matter of public record to which defense counsel had access.  Under such circumstances, there is no Brady violation.  See Coe v. Bell, 161 F.3d 320, 344 (6th Cir. 1998) ("There is no Brady violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose.") (ellipsis in original) (internal quotation and citation omitted).  Consequently, the prosecutor's purported failure to introduce the trial transcripts of the prior conviction did not violate petitioner's due process rights.

Accordingly, petitioner is not entitled to habeas relief on this claim.

6.      Ineffective Assistance of Counsel

Petitioner claims trial counsel rendered ineffective assistance by failing to present as evidence the above-referenced trial transcripts of his 1986 prior conviction for gross vehicular manslaughter, which, according to petitioner, would have shown the prior conviction was not a serious felony for purposes of California's Three Strikes Law.

23

United States District Court
For the Northern District of California

Petitioner presented this claim to the California Supreme Court only in his state habeas petition, and the court denied relief, citing, in relevant part, In re Robbins, 18 Cal. 4th 770, 780 (1998).  (Exs. 7-8.[9])  "California courts signal that a habeas petition is denied as untimely by citing the controlling decisions, i.e., Clark and Robbins."  Walker v. Martin, 131 S. Ct. 1120, 1124 (2011).[10] [11]

A federal court will not review questions of federal law decided by a state court "if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  See Coleman v. Thompson, 501 U.S. 722, 729 (1991); see also Bargas v. Burns, 179 F.3d 1207, 1214 (9th Cir. 1999) (holding where state court decision rests on clearly articulated alternative grounds, one invoking state procedural bar and one addressing merits, federal court is precluded from reviewing claim).  California's timeliness rule has been found to be both independent, see Bennett v. Mueller, 322 F.3d 573, 582-83 (9th Cir. 2003), and adequate, see Walker v. Martin, 131 S. Ct. 1120, 1131 (2011).  It thus constitutes a basis for a federal district court to deny as procedurally defaulted a claim in a federal petition that was rejected for untimeliness in the California courts.  Here, because petitioner's claim was denied as untimely by the California Supreme Court, it is procedurally defaulted, and, consequently, not subject to federal habeas review, unless, as discussed below, an exception is shown.

Procedural default can be overcome if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice."

_____

[9]  Except as otherwise specified, all references herein to exhibits are to exhibits submitted by respondent in support of the Answer.

[10]  In California, a state habeas petitioner who "belatedly presents a collateral attack . . . [must] explain the delay in raising the question."  See In re Swain, 34 Cal. 2d 300, 302 (1949).  The rule in Swain "is commonly referred to as the 'untimeliness' bar."  Washington v. Cambra, 208 F.3d 832, 833 (9th Cir. 2000).

[11]  The California Supreme Court, in denying petitioner's state petition, also cited People v. Duvall, 9 Cal. 4th 464, 474 (1995), a case requiring state habeas claims be stated with particularity.

United States District Court

For the Northern District of California

<u>Coleman</u>, 501 U.S. at 750.  The "cause standard" requires the petitioner to show "'some objective factor external to the defense impeded counsel's efforts' to raise the claim." <u>McCleskey v. Zant</u>, 499 U.S. 467, 493 (1991) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986)).  "Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule," the Supreme Court has noted that "a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard." <u>Murray</u>, 477 U.S. at 488 (internal quotation and citation omitted).  As to the prejudice prong, petitioner bears the burden of showing, "not merely that the errors at his trial created a <u>possibility</u> of prejudice, but that they worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982) (emphasis in original).  "To ascertain the level to which such errors taint the constitutional sufficiency of the trial, they must 'be evaluated in the total context of the events at trial.'" <u>See</u> <u>Paradis v. Arave</u>, 130 F.3d 385, 393 (9th Cir. 1997) (quoting <u>Frady</u>, 456 U.S. at 169).

The "miscarriage of justice" exception is limited to habeas petitioners who can show, based on "new reliable evidence," that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" <u>Schlup v. Delo</u>, 513 U.S. 298, 324-27 (1995) (quoting <u>Murray</u>, 477 U.S. at 496); <u>see</u>, <u>e.g.</u>, <u>Wildman v. Johnson</u>, 261 F.3d 832, 842-43 (9th Cir. 2001) (holding petitioner must establish "factual innocence" in order to show fundamental miscarriage of justice would result from application of procedural default).  In particular, a petitioner must show "it is more likely than not that no reasonable juror would have convicted him in the light of [such] new evidence." <u>Schlup</u>, 513 U.S. at 327.

Here, petitioner has not attempted to show cause and prejudice or a fundamental miscarriage of justice.  Nor is there anything in the record to suggest he could make the requisite showing.

Accordingly, petitioner is not entitled to habeas relief on this claim.

United States District Court

For the Northern District of California

C.      Petitioner's Claims in C 09-3789 MMC

In 09-3789 MMC, petitioner raises the following claims for relief: (1) the trial court failed to give a requested jury instruction on "good faith belief" with respect to the grand theft and burglary charges; (2) the trial court erroneously denied his request for a jury trial on the issue of whether his prior conviction for vehicular manslaughter was a serious felony for purposes of California's Three Strikes Law; (3) petitioner was denied a meaningful opportunity to contest factual issues relating to said prior conviction; (4) the prosecution failed to present sufficient or appropriate evidence to establish said prior conviction; (5) the trial court erroneously imposed an increased sentence by reason of said prior conviction; and (6) trial counsel rendered ineffective assistance by failing to present evidence as to said prior conviction, which evidence would have shown said conviction was not a serious felony for purposes of California's Three Strikes Law.  As set forth in the preceding discussion, the Court has already addressed Claims 3, 4, and 6.  Consequently, only Claims 1, 2, and 5 are addressed below.

1.      Instructional Error – Good Faith Belief

Petitioner claims the trial court erred by refusing to give the jury a special instruction that an individual who takes personal property with the good faith belief that the property has been abandoned by the owner, or that he has permission to take the property, is not guilty of theft, even if such good faith belief is unreasonable.  Petitioner also claims the trial court erred by refusing to give the jury a special instruction that one who enters a building with the good faith belief that the entry was with the consent of the owner, or was to commit acts that were not criminal, is not guilty of burglary, even if such good faith belief is unreasonable. The Court of Appeal summarized and rejected these claims as follows:

> [Petitioner] asked the trial court to give the jury special instructions that if "one takes personal property with the good faith belief that the property has been abandoned or discarded by the true owner," or that "one has permission to take the property," he "is not guilty of theft," even "if such good faith belief is unreasonable."  He similarly requested an instruction on burglary that if "one enters a building with the good faith belief," again "even if such good faith belief is unreasonable," that "the entry into the building was either consented to by the true owner, or was to commit acts which were not criminal one is not guilty of burglary."  Both requested instructions added the element that the

prosecution "must prove beyond a reasonable doubt" the [petitioner]'s lack of "a good faith belief that either" the property had been abandoned or discarded, he had permission to take the property, or that the entry into the building was "consented to" or not for the purpose of committing a crime.

The trial court refused to give the proposed instructions, but instead gave a modified version of the CALJIC No. 4.35 instruction on ignorance or mistake of fact, which advised the jury: "An act committed in ignorance or by reason of a mistake of fact, which disproves any criminal intent, is not a crime. A person who commits an act under a good faith belief in the existence of certain facts and circumstances, that, if true, would make the act lawful, is not guilty of a crime when that crime requires a certain specific intent. [¶] A person who commits an act under a good faith and reasonable belief in the existence of certain facts and circumstances, that, if true, would make the act lawful, is not guilty of a crime when that crime requires a general criminal intent."

[Petitioner] points out that the "crux" of his "defense," based upon his own testimony, was that "he had a good faith belief that the property was abandoned or that he had permission to take the property." He argues that the instruction on the good faith "mistake of fact defense" given by the trial court was deficient in its failure to inform the jury of the specific nature of the "certain facts and circumstances" which, if true, "would render the act lawful." He maintains that the supplemental instructions requested by the defense were therefore necessary to accurately and thoroughly advise the jury of the factual and legal underpinnings of his good faith mistake of fact defense. He adds that the trial court's failure to give the supplemental instructions deprived him of the right to meaningful consideration of his defense by the jury.

[Petitioner]'s good faith mistake of fact defense was based on the established " ' "rule in this state and generally throughout the country that a bona fide belief, even though mistakenly held, that one has a right or claim to the property negates felonious intent. [Citations.] A belief that the property taken belongs to the taker [citations], or that he had a right to retake goods sold [citation] is sufficient to preclude felonious intent. Felonious intent exists only if the actor intends to take the property of another without believing in good faith that he has a right or claim to it. [Citation.]' [Citation.] [Citation.]" (*People v. Tufunga* (1999) 21 Cal.4th 935, 943.)

The supplemental good faith mistake of fact instructions requested by the defense were in the nature of pinpoint instructions, " 'to which a defendant is entitled upon request. Such instructions relate particular facts to a legal issue in the case or "pinpoint" the crux of a defendant's case.... They are required to be given upon request when there is evidence supportive of the theory, but they are not required to be given sua sponte.' [Citations.]" (*People v. Rogers* (2006) 39 Cal.4th 826, 878.) "Further, ' "[i]t is the trial court's duty to see that the jurors are adequately informed on the law governing all elements of the case to the extent necessary to enable them to perform their function. This duty is not always satisfied by a mere reading of wholly correct, requested instructions...." ' [Citation.]" (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1318.) "The trial court is required to instruct on the general principles of law that are necessary to the jury's understanding of the case." (*People v. Grassini* (2003) 113 Cal.App.4th 765, 777.)

However, "A trial court must give a pinpoint instruction, even when requested, only if it is supported by substantial evidence." (*People v. Ward* (2005) 36

United States District Court

For the Northern District of California

Cal.4th 186, 214; see also *People v.. San Nicolas* (2004) 34 Cal.4th 614, 669; *People v. Shelmire* (2005) 130 Cal.App.4th 1044, 1058.)  A "court need not give a requested instruction on a purported defense unless it is supported by evidence" that is "reasonable, credible and of solid value." (*People v. Quintero* (2006) 135 Cal.App.4th 1152, 1165.)  Also, a trial court need not give a pinpoint instruction if it is "argumentative" or "merely duplicates other instructions...." (*People v. Bolden* (2002) 29 Cal.4th 515, 558; see also *People v. Coffman and Barlow* (2004) 34 Cal.4th 1, 99.)

. . .

We are persuaded that the jury was adequately advised of the good faith mistake of fact defense by the instructions given and the arguments of counsel.  The CALJIC No. 4.35 instruction specifically advised the jury that a person who acts upon a good faith mistake of fact which disproves the requisite specific or general intent to commit an unlawful act, is not guilty of a crime.  The good faith mistake of fact instruction was directly followed by a detailed recitation of the essential elements of burglary and grand theft, including the "specific intent to steal and take away someone else's property" and "deprive the owner permanently of that property."  We must presume the jurors followed the court's instructions, and further that they were able to understand and correlate the instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.)  Considered in their totality, as the instructions must be, the jury was advised that if [petitioner] acted according to a good faith belief that he was entitled to take the abandoned property, he did not entertain the necessary specific intent to be guilty of burglary or grand theft.  (See *People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248; *People v. Castillo* (1997) 16 Cal.4th 1009, 1016.)

The argument of counsel reinforced the application of the good faith mistake of fact defense to the evidence presented.  The obvious focus of the defense in the presentation of evidence was upon [petitioner]'s avowed belief that he was somehow authorized to be on the abandoned premises and take the bags of property.  Referring to the court's instructions, defense counsel also repeatedly emphasized in closing argument that if defendant had "good faith knowledge" or belief that the "property was abandoned," based upon the information given to him "by the women" that "what you're doing is legal" and the dilapidated state of the property he observed, "then he didn't violate the law."  The correlation between the CALJIC No. 4.35 instruction and the specific good faith mistake of fact claim of the defense was not lost on the jury.

Upon our review of the record in its entirety, we conclude that the instructions given here correctly and effectively informed the jury on the proper consideration of the good faith mistake of fact defense.  The trial court therefore did not err by declining to give the additional and essentially duplicative pinpoint instructions proposed by the defense. (*People v. Coffman and Barlow*, *supra*, 34 Cal.4th 1, 99; *People v. Panah* (2005) 35 Cal.4th 395, 486-487 .)

People v. Von Staden, 2008 WL 332381, at *6-9.

Applying to petitioner's current claim the legal principles on instructional error outlined above, the Court finds the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

United States District Court

For the Northern District of California

Moreover, there was no prejudicial error under Brecht.  First, there was no error.  As the California Supreme Court observed, the instructions as a whole and defense counsel's argument clearly informed the jury as to the facts and circumstances that pertained to the mistake-of-fact instructions.  Further, even if petitioner has shown error, no prejudice has been shown.  A review of the record reveals little, if any, convincing evidence to support petitioner's claim that he held a good faith belief that the property was abandoned, or that he had permission to take the property, or that he had permission to enter the Thomsons' home.  In his argument to the state Court of Appeal, petitioner pointed to his own testimony that the "women he and Tadder had met had told him that the house was abandoned." (Ex. 13 at 39.)  Nothing in the record, however, suggests that, even assuming the women did make such a statement, petitioner had reason to believe them.  In the Court of Appeal, petitioner contended his testimony was corroborated by officers' testimony "that the house was so full of stuff and in such disrepair that it was not safe to enter." (Ex. 13 at 39.)  Sergeant Wyatt testified, however, that when he approached the property, there was a newly installed wooden fence built to keep people out.  (10RT 811.)

Petitioner also pointed to his own testimony that "the women had told him they were cleaning up the house," and that the women invited Tadder and Tadder invited petitioner to go to the house, look through the "stuff," and take what petitioner wanted.  (Ex. 13 at 39.)  Additionally, petitioner cited to his testimony that "while leaving the property he found two bags sitting on the side of the driveway." (Ex. 13 at 39.)  There is no evidence, however, to support petitioner's asserted belief that people hired to clean a house are entitled to remove its contents.  Indeed, petitioner testified that when he arrived, he and Tadder walked around the house because the women were not responding when he and Tadder called out their names, and that the front door was locked.  (11RT 1183-1184.)  Petitioner also admitted that when he looked inside the bags, he saw the coins and thought, "how much is this worth, should I sell it, who does it belong to, where does it come from, should I return it, would I get a reward?" (11RT 1224-1225.)  Further, the evidence also showed that, when the police first approached, Tadder stated "Go, go, go," and petitioner began walking away from the

United States District Court
For the Northern District of California

property at a faster pace.  (10 RT 807, 11RT 1230.)

In sum, there was considerable evidence demonstrating petitioner's knowledge that the property belonged to someone else.  On such record, it cannot be said that any error from the omission of the requested instructions resulted in "substantial and injurious effect or influence in determining the jury's verdict."  Calderon v. Coleman, 525 at 146.[12]

Accordingly, petitioner is not entitled to habeas relief on this claim.

2.    Apprendi Error

Petitioner claims the trial court, in Superior Court Case No. SC136369B, erred by refusing his request for a jury trial on the issue of whether his prior vehicular manslaughter conviction constituted a serious felony and thus qualified as a prior strike, particularly with respect to the factual issue of whether he personally inflicted great bodily injury on a person other than an accomplice.  Petitioner asserts the jury should have made that determination pursuant to the rules set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000).  The Court of Appeal denied this claim, relying on California case law finding no constitutional impediment to a judicial determination that a prior conviction qualifies as a serious felony for purposes of enhanced punishment under California's Three Strikes Law.  See People v. Von Staden, 2008 WL 332381, at *14-15 (citing People v. McGee, 38 Cal. 4th 682, 709 (2006), People v. Black, 41 Cal. 4th 799, 819 (2007)).

There is no dispute that a judge may find "the fact of a prior conviction."  See Almendarez-Torres v. United States, 523 U.S. 224, 239 (1998).  In Apprendi, however, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact

_____

[12]    Respondent contends this claim is unexhausted because petitioner failed to present to the California Supreme Court the question of his request for special instructions on the burglary offense.  The Court disagrees.  Petitioner's petition for review from his direct appeal shows he did present the issue. (See Ex. 5 at 20.)  Although, as respondent points out, it appears petitioner mistakenly repeated the special instruction he had requested on the theft count, i.e., a good faith belief that he had permission to take the property, as opposed to a good faith belief that he had permission to enter, see id., the petition for review specifically presented the issue of the trial court's alleged "failure to instruct the jury on appellant's theory of the case" (see id.), and, as discussed above, petitioner's instant claim is identical to the claim he raised on direct appeal, see People v. Von Staden, 2008 WL 332381, at *5.  On the record as a whole, the Court finds petitioner fairly presented the instant claim to the state Supreme Court, thus rendering it exhausted.

1    that increases the penalty for a crime beyond the prescribed statutory maximum must be

2    submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 488-90.

3    Thereafter, in Wilson v. Knowles, 638 F.3d 1213 (9th Cir. 2011), the Ninth Circuit, while

4    acknowledging that "[c]ourts may reasonably disagree about some of the precise boundaries

5    of the [prior conviction] exception," clearly foreclosed any such disagreement as to whether

6    the facts here at issue fall within those boundaries.  In particular, the Ninth Circuit held that

7    where, as here, the factual predicate for the qualifying strike includes a finding that the

8    defendant personally inflicted great bodily injury on a victim who was not an accomplice,

9    and where, as here, those facts "weren't necessary to [the defendant's prior] conviction,"

10   each such fact must be found by a jury. See id. at 1215 (holding "it would be unreasonable

11   to read Apprendi as allowing a sentencing judge to find the kind of disputed facts at issue

12   here"); but see id. at 1216 (Kozinski, C.J., dissenting) (noting "as of 2008, . . . there was no

13   clearly established authority as to whether the exception permits sentencing judges to find the

14   kind of underlying facts at issue here"; further noting "the Supreme Court hasn't stepped in

15   to draw a clear line for us").  In this instance, however, even assuming petitioner has

16   demonstrated an Apprendi violation as interpreted by the Ninth Circuit in Wilson, he is not

17   entitled to habeas relief because, as set forth below, any such error was harmless.

18       Failure to submit a sentencing factor to a jury is subject to harmless error analysis.

19   See Washington v. Recuenco, 548 U.S. 212, 221-22 (2006).  In federal habeas proceedings,

20   there is prejudice if the error "had substantial and injurious effect" on petitioner's sentence

21   under the standard set forth in Brecht, 507 U.S. at 637.  See Hoffman v. Arave, 236 F.3d 523,

22   540 (9th Cir. 2001).  Under this standard, a court must grant relief if there is "grave doubt" as

23   to whether a jury would have found the relevant factors beyond a reasonable doubt.  See

24   O'Neal v. McAninch, 513 U.S. 432, 446 (1995).  Grave doubt exists when "the matter is so

25   evenly balanced" that the district court is in "virtual equipoise as to the harmlessness of the

26   error." Id. at 453.

27       Here, in a bifurcated proceeding following the consolidated trial in Marin County

28   Case Nos. SC122889A, SC124442A, and SC126580A, all issues relating to the prior strike

United States District Court

For the Northern District of California

allegations were tried to a jury. (8RT 605-62.) As noted above, the jury found true nine prior convictions; additionally, the jury made a special finding that, during the commission of the prior vehicular manslaughter, "petitioner personally inflicted great bodily injury upon a person not an accomplice." (9RT 677-682.) In Marin County Case No. SC136369B, the determination in the bifurcated proceeding was made by a judge based on the same evidence and the result was the same.

In particular, the prosecution's evidence at both trials, consisted of two items. The first item, identified as People's 14A in the first trial on the prior convictions and People's 39 in the second, was a packet of documents establishing that on July 30, 1986, petitioner was convicted of vehicular manslaughter with gross negligence, driving under the influence with injury, and driving at 0.10 percent blood alcohol content or above with injury. ( 4CT 908-31.) The second item of evidence the prosecution offered, identified as People's 17A at the first trial on the prior convictions and People's 42 at the second, was the published Court of Appeal opinion, People v. Von Staden, 195 Cal. App. 3d 1423 (1987), in which petitioner's 1986 convictions were affirmed and in which the facts of those offenses were described in detail. (4CT 932-39.) That evidence, as the Court of Appeal in reviewing the instant conviction found, demonstrates the decedent was only a passenger, not an accomplice, see id., 934-35, and, as the Court of Appeal further noted, petitioner offered no evidence suggesting anything to the contrary, see People v. Von Staden, 2008 WL 332381 at *48, despite his having, at that point in the proceedings, every reason to do so.

In sum, the same question and evidence that was put before the jury in Marin County Case Nos. SC122889A, SC124442A, and SC126580A was put before the trial judge in Marin County Case No. SC136369B. Because the jury found petitioner's prior vehicular manslaughter conviction was a strike, it cannot be said that there exists grave doubt as to whether a jury in Marin County Case No. SC136369B likewise would have made the same finding.

Accordingly, petitioner is not entitled to habeas relief on this claim.

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.   Sentencing Error

Petitioner claims the trial court arbitrarily and capriciously imposed an increased sentence pursuant to California's Three Strikes Law, based upon a prior conviction that did not constitute a strike.  As discussed above in section III.B.3, the evidence was sufficient to support the trial courts' findings that petitioner's 1986 conviction for vehicular manslaughter was a serious felony under the state's Three Strikes Law.

Accordingly, petitioner is not entitled to habeas relief on this claim.

### D.   Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability.  See Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard.  Id. § 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

## IV.  CONCLUSION

For the reasons stated above, the petitions for a writ of habeas corpus are hereby DENIED, and a certificate of appealability is hereby DENIED.

Although Case No. C 09-3788 was closed when it was consolidated with Case No. 09-3789, the Clerk, to ensure a complete record in both actions, shall file a copy of this Order in both actions and shall enter judgment in favor of respondent in both actions.  Additionally, the Clerk shall close the file in Case No. 09-3789.

1   Lastly, the Clerk shall substitute Warden Ron Davis on the docket as the respondent in

2   both actions.

3   IT IS SO ORDERED.

4   DATED: May 26, 2015

5   _____
    MAXINE M. CHESNEY
6   United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

34